IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| STACY ROGERS, Individually, and on behalf of all other similarly situated, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civil Action No. 3:11CV620–HEH |
| CITY OF RICHMOND, VIRGINIA, ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This action for unpaid overtime compensation is presently before the Court on Defendant's Motion for Partial Summary Judgment. The parties have submitted detailed memoranda in support of their respective positions, and the Commonwealth of Virginia ("the Commonwealth") has filed an intervenor's brief in opposition. The Court heard argument on March 20, 2012. For the reasons set forth herein, the Motion will be denied.

## I. BACKGROUND

Plaintiffs in this case are current and former law-enforcement officers ("Plaintiffs" or "the Officers") of the City of Richmond Police Department. The Defendant City of Richmond ("Defendant" or "the City") is a public entity with more than 900 persons presently in its employ, including approximately 750 police officers. For purposes of the motion at hand, the parties have stipulated to the facts that follow.

Police officers employed by the City are generally scheduled to work 80 hours within any given 14-day work period. At times, however, such personnel may be assigned additional hours of work. To date, the City's official policy has been to pay

police officers at their *regular* rate for all hours of labor *up to* 86 per cycle, with certain exceptions not directly at issue here. That is, officers do not receive overtime compensation for any hours of work between 80 and 86 in a 2-week span.[1]

On September 19, 2011, Plaintiffs filed a Collective and Class Action Complaint in this Court, alleging violations of both federal and state labor laws. Of particular relevance here, Count Two of the Complaint asserts that Defendant's practice of paying "straight time" rather than a premium rate for the "gap" of hours worked between 80 and 86 in a 14-day work cycle violates § 9.1-700 *et seq.* of the Virginia Code (the "Virginia Law"). In its Motion for Partial Summary Judgment, the City now argues that its duty under the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 207(k), and implementing regulations to pay overtime wages only for labor exceeding 86 hours in a 14-day work period overrides its more stringent state-law obligation.[2] In other words, the City contends that the Virginia Law's 80-hour overtime threshold is preempted by the 86-hour standard set by the FLSA, thus rendering the Officers' "gap pay" claim

---

[1] Defendant attached to its motion several internal documents setting forth the City's overtime policy for law-enforcement employees. For instance, City of Richmond Executive Order 05-15 explains the City's "86-hour threshold" as follows:
> The new threshold utilized by the Richmond Police Department for sworn employees, in compliance with FLSA guidelines, is to establish that each hour worked in a 14 day cycle up to and including 86 hours will be paid at straight time. Every hour worked in the 14 day cycle above 86 shall be paid at the overtime rate of time and one half.

(Def.'s Mem. Supp., Ex. A, at 2.)

[2] Under 29 U.S.C. § 207(k), as interpreted by the Secretary of Labor, no overtime pay is required for law enforcement personnel until the number of hours worked exceeds 171 hours in a 28-day period, or a proportional number of hours in a shorter work period. 29 C.F.R. §§ 553.230(b)-(c). In a 14-day work period, as in the instant case, that ratio works out to 86 hours.

2

unsustainable as a matter of law. In response, the Officers and the Commonwealth[3] argue that the two laws are complementary, such that the City was not free to disregard the mandates imposed by the Virginia Law. The matter is now ripe for decision.

## II. STANDARD OF REVIEW

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Thus, a case that turns solely on a question of law may be resolved at the summary judgment stage. *Nat'l City Bank of Ind. v. Turnbaugh*, 463 F.3d 325, 329 (4th Cir. 2006). In evaluating a motion for summary judgment, the Court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In this case, the parties agree, and the Court finds, that Defendant's preemption argument requires purely a legal determination and does not turn on any disputed material facts.

## III. ANALYSIS

The sole question presented is whether § 207(k) of the FLSA preempts the potentially more generous provisions of the Virginia Law. Two settled principles of preemption jurisprudence guide this Court's analysis. First, "the purpose of Congress is

---

[3] After receiving notice of Defendant's challenge on preemption grounds to § 9.1-700 *et seq.* of the Virginia Code, the Commonwealth moved to intervene in this matter pursuant to Rule 5.1(c). *See* Fed. R. Civ. P. 5.1(c) (allowing the attorney general to intervene when a party "draw[s] into question the constitutionality of a ... state statute"). Finding it appropriate to do so, this Court granted the motion, and thereby permitted the Commonwealth to file a brief defending the constitutionality of the Virginia Law.

3

the ultimate touchstone in every pre-emption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal citation and quotation marks omitted); *see also Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987) ("In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress."). Second, the Court begins with a strong presumption that Congress did not intend to override the power of the State to provide for the welfare of its people, especially "in a field traditionally occupied by the States," such as labor law. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008); *see also Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987) ("[P]re-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State."); *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 193 (4th Cir. 2007). The party claiming preemption therefore bears the heavy burden of demonstrating that it was "the clear and manifest purpose of Congress" to supersede "the historic police powers of the States." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Lohr*, 518 U.S. at 485).

It is well settled that, under the Supremacy Clause of the U.S. Constitution, federal statutes "can nullify conflicting state or local actions." *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 595 (4th Cir. 2005). Specifically, federal law preempts state law if (1) Congress expressly so states, (2) Congress enacts comprehensive laws that leave no room for supplementary state regulation, or (3) state law actually conflicts with federal law. *Guerra*, 479 U.S at 280-81. In this case, the City contends that the Virginia Law stands in direct and positive conflict with the FLSA. To satisfy its burden, Defendant

4

must demonstrate that "compliance with both [the FLSA] and [the Virginia Law] is a physical impossibility," *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or that "the state law stands as an obstacle to the accomplishment of the full purposes and objectives" of Congress. *Worm v. Am. Cyanamid Co.*, 970 F.2d 1301, 1305 (4th Cir. 1992) (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)). For the reasons that follow, Defendant has failed to make either such showing here.

First, the FLSA and Virginia Law do not conflict. Rather, the two can—and by definition, must—operate in tandem: where the state law's protections end, the federal law's protections begin. As a general matter, "a state or locality's imposition of additional requirements above a federal minimum is unlikely to create a direct and positive conflict with federal law." *S. Blasting Servs., Inc. v. Wilkes Cnty.*, 288 F.3d 584, 591 (4th Cir. 2002); *see also Wyeth*, 555 U.S. at 573 (rejecting Wyeth's argument that "requiring it to comply with a state-law duty to provide a stronger warning about IV-push administration would obstruct the ... objectives of federal drug labeling regulation ... [and] interfere with Congress's purpose to ... strike a balance between competing objectives"). Instead, the Fourth Circuit has explained that "a conflict is more likely to occur when a state or locality provides that compliance with a federal standard is not mandated, or when compliance with federal law actually results in a violation of local law." *S. Blasting Servs., Inc.*, 288 F.3d at 591-92. Here, the Virginia Law is readily reconcilable with the function and purpose of the FLSA.

The state statute at issue provides that:

5

> Employers shall pay ... law-enforcement employees overtime compensation or leave, as under the Fair Labor Standards Act, 29 U.S.C. § 207(o), at a rate of not less than one and one-half times the employee's regular rate of pay for all hours of work *between* the statutory maximum permitted under 29 U.S.C. § 207(k) and the hours for which an employee receives his salary, or if paid on an hourly basis, the hours for which the employee receives hourly compensation.

Va. Code Ann. § 9.1-701(A) (emphasis added). Thus, the Virginia Law deals solely with the "gap," if any, between an employee's regular schedule of employment and the 86-hour federal overtime trigger established by § 207(k).[4] Simply put, an employee who works more than his normal hours, but less than the FLSA maximum, is entitled to overtime wages under state, but not federal, law. On the other hand, an officer is afforded only federal overtime pay for hours worked in excess of the FLSA's statutory maximum. In this respect, the two statutes form a complementary scheme. *Cf. Pac.*

---

[4] In an attempt to refute this understanding of the statute's operation in the first instance, Defendant asserts that the Virginia Law "is ambiguous," and that it "does not establish a maximum hours standard for a particular work period after which a law enforcement officer is entitled to overtime compensation." (Def.'s Reply 2-4.) This argument is without merit. "For purposes of computing ... law-enforcement employees' entitlement to overtime compensation under § 9.1-701(A)," the statute defines "hours of work" as "all hours that an employee works or is in a paid status *during his regularly scheduled work hours*." Va. Code. Ann. § 9.1-703 (emphasis added). And "[r]egularly scheduled work hours" are "those ... that are recurring and fixed within the work period and for which an employee receives a salary or hourly compensation." *Id.* § 9.1-700. Further, the Virginia Law specifically exempts from an employee's regularly scheduled work hours any "on-call, extra duty assignments or any other nonrecurring and nonfixed hours." *Id.*
"[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous ... 'judicial inquiry is complete.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002) (internal citation omitted). The foregoing regime can reasonably be understood to vest qualifying law-enforcement officers with a right to state-law overtime compensation for any hours worked beyond the fixed and recurring hours for which the officer is ordinarily scheduled to work. In this case, the parties have stipulated that police officers employed by the City of Richmond are regularly scheduled for, and receive salaries based on, 80 hours of work in a 14-day period. (Def.'s Mem. Supp. at 2; Pls.' Mem. Opp'n at 2.)

6

*Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1424 (9th Cir. 1990), *cert. denied*, 504 U.S. 979 (1992) ("California's more protective overtime provisions are compatible with, rather than conflict with, the [FLSA].").

Moreover, the more generous overtime policy embedded in the Virginia Law falls squarely within the "savings clause" of the FLSA, which states in pertinent part:

> No provision of this Act or of any order thereunder shall excuse noncompliance with any ... State law ... establishing a minimum wage higher than the minimum wage established under this Act or a maximum workweek lower than the maximum workweek established under this Act.

29 U.S.C. § 218(a). As explained by the Fourth Circuit, this provision "expressly allows states to provide workers with *more beneficial* minimum wages and maximum workweeks than those mandated by the FLSA itself." *Anderson*, 508 F.3d at 193 (emphasis added). One court described the interplay between § 207(k) and § 218(a) in the following way:

> Section 207 [of the FLSA] specifies how many hours a person may work in a given period before overtime pay commences. These are rules of federal law. States are free to set higher hourly wages or shorter periods before overtime pay comes due. That's what § 218(a) says.

*Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 429 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 933 (2011). The FLSA thus does not conflict with a state law merely because the latter provides more rigorous protections or greater benefits to employees. *See* U.S. Dep't of Labor, Wage & Hour Div. Op. Letter, 2006 DOLWH LEXIS 12, at *1 (March 10, 2006) ("[N]o provision of the FLSA preempts a state law or municipal ordinance that provides greater benefit to employees."). To the contrary, the FLSA preempts only those

state laws which attempt to *limit* the Act's employee benefits by mandating *lower* minimum wages or *longer* maximum workweeks.

In order to avoid precisely the sort of uncertainty that the City now alleges, the FLSA specifically leaves intact state laws that enhance federal overtime and minimum wage rights. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247 (2d Cir. 2011) ("[T]he FLSA's 'savings clause' makes clear that states may enact wage laws that are more protective than those that are provided in the act."); *Spoerle*, 614 F.3d at 429 ("States are free to set higher hourly wages or shorter periods before overtime pay comes due."); *Pac. Merch. Shipping Ass'n*, 918 F.2d at 1422 ("Congress has specifically allowed states to enforce overtime laws more generous than the FLSA."); *Pettis Moving Co., Inc. v. Roberts*, 784 F.2d 439, 441 (2d Cir. 1986) ("Section 218(a) ... explicitly permits states to set more stringent overtime provisions than the FLSA."); *Doctors Hosp., Inc. v. Recio*, 558 F.2d 619, 622-23 (1st Cir. 1977) ("[Puerto Rico's] Mandatory Decree ... provides more benefits for those workers than does the Fair Labor Standards Act.... [S]o long as the decree requires higher pay than does the federal statute, conflict does not materialize."). Indeed, courts have long recognized that states remain free, within the outer bounds demarcated by the FLSA, to exercise their traditional authority to legislate for the welfare of their citizens in accordance with local conditions. *See, e.g., Shahriar*, 659 F.3d at 248 (deeming the savings clause to "demonstrate[] Congress' intent to allow state wage laws to co-exist with the FLSA by permitting explicitly, for example, states to mandate greater overtime benefits than the FLSA"); *Maccabees Mut. Life Ins. Co. v.*

8

*Perez-Rosado*, 641 F.2d 45, 46 (1st Cir. 1981) ("The FLSA ... specifically contemplates state regulation ... in the area of wages and working conditions.").

Here, as Defendant aptly observes, the Virginia Law does not contain a "clear, definite, enumerated standard[] of a maximum workweek." (Def.'s Mem. Supp. at 10.) The statute does not, for instance, establish an exact number of hours after which premium wages come due. Rather, as both parties recognize, § 9.1-701(A) makes an employee's right to overtime compensation dependent upon the number of hours he is "regularly scheduled" to work within a "recurring and fixed" period. Va. Code Ann. § 9.1-702 (defining "work period"); *id.* § 9.1-703 (defining "hours of work ... [f]or purposes of computing ... law-enforcement employees' entitlement to overtime compensation"). Whatever the number may be—whether 40 hours every 7 days, 80 hours every 14 days, or 170 hours every 28 days—the employer is obligated to pay at least time and one-half wages for work exceeding that threshold. In this way, the Virginia Law allows localities to decide independently whether they will afford their law-enforcement officers greater overtime benefits than those mandated by the FLSA. That is, § 9.1-700 *et seq.* vests each municipality with discretion to set their officers' "regularly scheduled" hours in light of the locality's particular needs, and, if less than 86 hours in a 2-week span, thereby establish the employees' *state-law* overtime trigger.[5]

---

[5] At oral argument, counsel for the City questioned the propriety of the state's delegation of this modicum of discretion to local governmental entities. Yet the FLSA plainly allows for both states *and municipalities* to implement policies supplemental to federal overtime standards. *See* 29 U.S.C. § 218(a). Thus, it is of no moment that the operation of the Virginia Law hinges, to some extent, upon the employment decisions of local law-enforcement agencies.

Defendant contends that the Virginia Law's lack of numerical specificity takes it outside the ambit of the FLSA's savings clause. Indeed, the City concedes that states may "provide employees with a higher minimum wage or a lower maximum workweek than the standards provided for in the FLSA," but argues that, in order to exercise such authority properly, Virginia "should have *enumerated* a maximum workweek standard and included this standard in section 9.1-700 *et seq.*" (Def.'s Reply 5 (emphasis added).) This Court declines to adopt such a rigid view of the FLSA's savings clause and the State's legislative prerogative, and will not find the Virginia Law ineffective merely because it provides for a *relative*, rather than *fixed*, overtime threshold. Simply put, Defendant reads § 218(a) too narrowly.

"[T]he purpose behind the FLSA is to establish a national *floor* under which wage protections cannot drop, not to establish absolute uniformity in minimum wage and overtime standards nationwide." *Pac. Merch. Shipping Ass'n*, 918 F.2d at 1418. The FLSA thus dictates the "specific *minimum* protections" to which employees are entitled. *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1267 (4th Cir. 1996) (emphasis added). Mindful of the Act's aim, courts must construe the FLSA "liberally to apply to the furthest reaches consistent with congressional direction." *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959). Further, courts "presum[e] that Congress, in enacting the FLSA for the benefit of workers, did not intend to override the States' traditional role in protecting the health and safety of their citizens." *Anderson*, 508 F.3d at 193.

Applying the foregoing principles, this Court finds that even if the Virginia Law does not expressly *fix* "a maximum work week lower than the maximum workweek established under" federal law, 29 U.S.C. § 218(a), it plainly *contemplates* an overtime threshold—as defined by an employee's ordinary work hours within a recurring period—lower than that set by the FLSA.[6] The Virginia Law thus in no way impedes the Act's objective of "protect[ing] all covered workers from substandard wages and oppressive working hours." *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 304 (4th Cir. 2004) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). Instead, by allowing police officers to accrue overtime compensation earlier than they would under federal law—in Plaintiffs' case, six hours sooner—the Virginia Law enhances the FLSA's benefits, and thus avoids the Act's preemptive effect.

In upholding similarly structured overtime regimes, other courts have agreed. For example, in *Karr v. City of Beaumont*, 950 F. Supp. 1317 (E.D. Tex. 1997), which Plaintiffs cite in their brief, the court considered a Texas statute making a police officer "entitled to overtime pay if the officer works more hours during a calendar month than the number of hours in the normal work month of the majority of the employees of the municipality other than fire fighters and police officers." *Id.* at 1324. As here, the statute

---

[6] The Commonwealth explains that its statute "establishes a maximum workweek by granting to the law-enforcement employer the discretion to schedule the number of an employee's recurring 'hours of work' to be paid at a regular rate, up to the number of hours permitted by the FLSA." (Commw. Mem. Opp'n 12.) The Commonwealth thus contends that "[a]lthough Virginia law does not require law-enforcement employers to provide more overtime compensation than the FLSA requires *in every case*, it must be read as establishing a shorter maximum workweek for purposes of overtime compensation whenever a law-enforcement employee's regularly scheduled hours of work for which the employee is paid at a regular rate are less than that permitted by the FLSA." (*Id.*) This Court agrees.

11

at issue in *Karr* did not fix an "enumerated" overtime trigger. Instead, the state law conditioned overtime entitlement on the number of hours regularly worked by the majority of non-law-enforcement municipal employees. *By reference to* the normal work schedule of civilian municipal employees, the court determined that the City of Beaumont was "required to pay police officers for time worked in excess of 40 hours per week." *Id.* Thus, recognizing that the contested statute could (and did) yield a maximum work week lower than that called for in the FLSA, the district court held that § 207(k) of the FLSA did not displace Texas's more liberal overtime policy, and found the plaintiff officers entitled to overtime wages under the state law. *Id.* at 1324-25. So too here: *by reference to* the regularly scheduled hours for which police officers in the City of Richmond receive their salaries—that is, 80 hours every 2 weeks, as stipulated by both parties—this Court is able to discern a clear, and more favorable, overtime threshold applicable to Plaintiffs in this action.

The cases relied upon by Defendant do not compel a different result. Critically, the instant matter involves a preemption question wholly distinct from the one settled by the Fourth Circuit in *Anderson*. In that case, plaintiffs asserted claims under North Carolina law for breach of contract, negligence, and fraud based on their employer's failure to pay them for time spent dressing and undressing for work. At bottom, their claims "were predicated on violations of the FLSA." 508 F.3d at 184. The question presented, therefore, was whether *state* law could provide relief for violations of the *federal* statute. Answering in the negative, the Fourth Circuit held that "the FLSA provides exclusive remedies for the enforcement of its own provisions," such that the

12

plaintiffs' "FLSA-based contract, negligence, and fraud claims [were] precluded under a theory of obstacle preemption." *Id.* at 194. Central to the court's conclusion, however, was the fact that the plaintiffs "[did] not contend ... that any North Carolina law entitle[d] them to unpaid wages," relying instead "on the FLSA for their rights, and ... invok[ing] state law only as the source of remedies for the alleged FLSA violations." *Id.* at 193. Here, by contrast, the Officers seek *state-law remedies* for an alleged violation of a *state statute*.[7] The Court can find no evidence that Congress intended for the FLSA to override such state-law actions.

## IV. CONCLUSION

Based on the record at hand, the Court cannot conclude that the City is unable to fulfill simultaneously its overtime obligations under both state and federal law. *Fla. Lime & Avocado Growers*, 373 U.S. at 142-43. Nor has Defendant demonstrated that the Virgnia Law in any way frustrates the operation of the FLSA. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525-26 (1977). Much to the contrary, the Virginia Law contributes to the FLSA's aim of ensuring fair wages, and, as an exercise of Virginia's traditional police power, is precisely the sort of legislation that Congress contemplated states would implement in conjunction with federal labor law. § 9.1-700 *et seq.* therefore steers clear of any conflict with, and is not preempted by, the FLSA.

In effect, the City encourages this Court to reverse the polarity of FLSA jurisprudence by finding a more generous, if not precisely "enumerated," state overtime

---

[7] More precisely, Plaintiffs claim unpaid overtime wages under *both* the Virginia Law (for 80 to 86 hours of work in a 14-day span) *and* the FLSA (for more than 86 hours of work in that same period).

13

law displaced by the FLSA. This Court's decision to the contrary places it in ample company. *See Overnite Transp. Co. v. Tianti*, 926 F.2d 220, 222 (2d Cir. 1991) ("[E]very Circuit that has considered the issue has reached the same conclusion—state overtime wage law is not preempted by ... the FLSA."); *see, e.g., Butler v. DirectSAT USA, LLC*, 800 F. Supp. 2d 662, 671-72 (D. Md. 2011); *Guerrero v. Thomas*, 2010 Guam 11 ¶¶ 22-25 (2010); *Karr*, 950 F. Supp. at 1324; *Masters v. City of Huntington*, 800 F. Supp. 369, 370 (S.D. W. Va. 1992) (finding the FLSA not to preempt a "more generous" state law mandating overtime payment for firemen after a lesser number of hours).

Resolving all statutory ambiguities in Plaintiffs' favor, it would appear that the Officers' right to overtime compensation under the Virginia Law was triggered upon their performance of more than 80 hours of labor in a 14-day span. Because Plaintiffs may have a cognizable "gap pay" claim under § 9.1-700 *et seq.* of the Virginia Code, summary judgment as to Count Two is inappropriate at this juncture. Accordingly, Defendant's Motion must be denied.

An appropriate Order will accompany this Memorandum Opinion.

                                                /s/
                                       Henry E. Hudson
                                       United States District Judge

Date: March 23, 2012
Richmond, VA